**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| LACEY PAIGE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:12-cv-40 SNLJ |
| ) | |
| JERRY MURRAY, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is plaintiff's motion to compel (#88), defendants' motion for summary judgment (#72), and plaintiff's motion to postpone a summary judgment decision until adequate discovery has been completed (#97).

**I.     Factual Background**

The following facts are undisputed except where indicated. At all times relevant to the complaint, plaintiff was incarcerated at the Southeast Correctional Center ("SECC") in Charleston, Missouri. On or about October 9, 2010, plaintiff discovered fluid leaking from the wall of his cell and reported it to defendant James Hack, a correctional officer. The fluid was brownish with the consistency of water and increased gradually, and plaintiff says that it smelled like sewage. Defendants do not identify the source of the leak or dispute that it smelled like sewage.

Defendant Hack indicated that he would report the leak, and he states that he reported the leak to the "bubble" officer. Defendant Jarrod Walters, another correctional

officer, also states that he reported a leak in plaintiff's cell to a bubble officer. Plaintiff requested cleaning supplies, but defendants explained that certain cleaning supplies, including mops, cannot be distributed to inmates for security reasons. Instead, if an inmate has water in his cell, defendants state that old sheets and towels may be used to soak up the water. Plaintiff and his cellmate used their state-issued sheets and towels to soak up the water.

Defendants state that correctional officers do not place work orders to maintenance. Rather, they make such requests to the "bubble officers," and maintenance supervisors make repairs to cells when they get a work order. Plaintiff testified that he spoke with a maintenance repairman, but does not know who that maintenance repairman was. Plaintiff never spoke with defendant maintenance supervisors Ricky Alley, David Kirkman, David Perkins, and Joe Jones from October 9, 2010 through November 8, 2010 regarding a leak in his cell.

Plaintiff testified that he developed an itchy rash because of the leak in his cell. A nurse examined Plaintiff's rash and provided him with an antiitch cream, which relieved his symptoms. Plaintiff did not request any further medical treatment.

The leak in Plaintiff's cell was repaired on or about November 10 or 12, 2010, approximately 31 days after Plaintiff reported a leak. The Work Request was requested by defendant corrections officer Jerry Murray on November 8, 2010 at 4:41 a.m., and it was completed on November 12, 2010 at 10:51 a.m.

Plaintiff filed this lawsuit on March 5, 2012 against correctional officers Jerry Murray, Jody Arnold, Heath Cooley, James Hack, Michael Hart, Jarrod Walters, and Jackie Waters (in their individual and official capacities), and maintenance supervisors Ricky Alley, David Kirkman, David Perkins, and Joe Jones (in their official capacities only)[1]. All defendants have moved for summary judgment.

## II. Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of

---

[1]Plaintiff does not specify in what capacity he names defendants Alley, Kirkman, Perkins, or Jones. The Eighth Circuit has held that unless a plaintiff is unambiguous in this regard, the Court presumes that defendants are sued in their official capacities. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999).

3

any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

Government officials have a duty under the Eighth Amendment to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to prevail on his condition of confinement claim, plaintiff must show that the conditions constituted a substantial risk of serious harm or a deprivation of the minimal civilized measure of life's necessities. *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005); *Webb v. Lawrence County*, 144 F.3d 1131, 1135 (8th Cir. 1998); *Frye v. Pettis County Sheriff Dept.*, 41 Fed. Appx. 906, 2002 WL 1726919, *1 (8th Cir. 2002). The Constitution does not mandate comfortable prisons. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prison conditions that create temporary inconveniences or discomforts or that make confinement unpleasant do not constitute Eighth Amendment violations. *White v. Nix*, 805 F. Supp. 721, 724 (S.D. Iowa 1992).

Defendants state that plaintiff had "some water in his cell for a period of approximately thirty-one days, which he soaked up with towels." (#73 at 6.) Therefore, defendants maintain, plaintiff cannot show the that the conditions to which he was

subjected either constituted a substantial risk of serious harm or a deprivation of the minimal civilized measure of life's necessities.

Plaintiff disagrees. The Court notes that plaintiff did not respond to the defendants' statement of undisputed facts paragraph by paragraph, but he did provide a "statement of material facts in opposition of defendants' motion." (#92.) In the interests of justice and fairness, the Court has reviewed the submissions of both parties. Even if the Court accepted the defendants' statement of facts as undisputed, however, the defendants' statement of facts does not entitle them to summary judgment because they omit material facts raised by plaintiff.

First, the defendants' recitation of the facts does not include plaintiff's contention (which has been consistent throughout this proceeding) that the fluid leaking into his cell had the consistency of water but was brown and foul-smelling, suggesting it was sewage. Defendants do not identify the source of the leak, nor do they affirmatively state that it originated from the clean water line and not a sewage drain. Further, defendants state that plaintiff and his cellmate used "state-issued sheets and towels" to mop up the mess, citing plaintiff's own complaint. (#73-1 at ¶8 (citing #1 at 9).) But plaintiff and his cellmate — despite their requests for cleaning supplies — were left to clean the mess with the sheets and towels with which they also slept and bathed. Defendants do not state that is untrue. Rather, defendants contend that because plaintiff had a sink and running water, he was free to mop up raw sewage[2] and then "rinse" his sheets and towels. (#95 at 3-4.)

---

[2]Defendants state that plaintiff describes the fluid as "brown and foul-smelling" but that plaintiff does not allege there were feces present. A small leak in a sewage drain would naturally

5

The Constitution does not mandate "comfortable prisons," but the Eighth Amendment "prohibits punishments that 'deprive inmates of the minimal civilized measure of life's necessities'" such as "reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Short durations of poor sanitation in a prison cell may not rise to the level of a Constitutional violation, particularly where cleaning supplies are available. *See, e.g.*, *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) ("the intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable"); *White v. Nix*, 7 F.3d 120, 121 (8th Cir.1993) (holding no constitutional violation where unsanitary conditions lasted eleven days and cleaning supplies available). However, for example, requiring inmates to work for even ten minutes in "a shower of human excrement without protective clothing and equipment would be inconsistent with any standard of decency." *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990); *cf. Good v. Olk–Long*, 71 F.3d 314, 316 (8th Cir. 1995) (distinguishing *Fruit* because inmates were given protective eyewear, gloves, and boots while cleaning sewage back-up). "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard*, 887 F.2d at 137 (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

---

allow only liquid through. The Court is not comforted by the absence of visible fecal matter in light of plaintiff's sworn statements about the nature of the leak. As indicated above, defendants never reveal the source of the leak, let alone do they assure the Court or plaintiff that the leak occurred in a clean water line.

Here, it appears undisputed that the plaintiff had to sop up foul-smelling, brown liquid from his cell floor with his own sheets and towels and wring the liquid into his toilet (presumably with his bare hands). Then he had to reuse those same sheets and towels for daily living activities, and plaintiff was rarely permitted to leave the cell. Plaintiff experienced an itchy rash from exposure to the liquid. These conditions persisted for a month.

The Eighth Circuit suggests that a constitutional violation is found only where the "conditions are of proven adverse consequence to the health or other basic human needs of the plaintiff." *Whitnack*, 16 F.3d at 958. In *Whitnack*, for example, confinement in a filthy cell lasted for 24 hours until cleaning supplies were provided, and "given the brevity of their confinement," no constitutional violation was found. *Id.* Conditions in the *Whitlock* cell were described by the Court as "deplorable." *Id.* The "toilet was covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus." *Id.* at 956. But there, the plaintiff prisoners were given limited cleaning supplies within hours and the next day were given cleaning supplies such as a broom, dust pan, sponge, mop, toilet brush, and chemical cleaners. *Id.* A plaintiffs' jury verdict was overturned by the Eighth Circuit because there was no proven adverse consequence to plaintiffs' health or other basic human need due to the short duration of the deplorable conditions. But the Court of Appeals suggested that

longer exposure to a "filthy cell" without cleaning supplies — such as "weeks or months" — could be "intolerably cruel." *Id*. at 958 (citing *Hutto*, 437 U.S. at 687).

Here, plaintiff has at least raised a question of fact as to whether the conditions were of proven adverse consequence to health and human needs. He was required to walk through the brown, foul-smelling liquid any time he left his bunk, including to retrieve his meals, and he had only thin shower shoes (flip-flops) to wear on his feet. He had to reuse the linens he used to clean up the floor. He developed a documented itchy rash. The cases upon which defendants rely in support of their position are distinguishable because in those cases, the prisoner plaintiffs were supplied with — at a minimum — additional linens with which to mop up the foul liquid. (*See* #95 at 4, 6 (citing *Garner v. Sanders*, No. 08-6031, 2009 WL 2905586 (W.D. Ark. Sept. 4, 2009); *Frye v. Pettis Cnty. Sheriff Dep't*, 41 Fed. App'x 906, 908 (8th Cir. 2002)).

Looking to each of the defendants, it does appear that some are entitled to dismissal. The complaint is silent as to whether maintenance supervisors Ricky Alley, David Kirkman, David Perkins, and Joe Jones are being sued in their official or individual capacities. Where a complaint is silent about the capacity in which the defendant is sued, the Court must interpret the complaint as including only official-capacity claims. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. *Will v. Michigan Dept of*

*State Police*, 491 U.S. 58, 71 (1989). Neither a State nor its officials acting in their official capacity are persons under § 1983. *Id*. As a result, claims against defendants Alley, Kirkman, Perkins, and Jones will be dismissed. In addition, the claims made against defendants Murray, Arnold, Cooley, Hack, Hart, Walters, and Waters in their official capacities will be dismissed.

Correctional officer defendants Hack and Walters specifically argue that they are entitled to summary judgment because they reported the leak to the bubble officer, who was apparently responsible for placing a work order. Defendants Hack and Walters state that their obligations ended after they reported the leak because their duties did not include reporting work orders or conducting repairs. Defendants state that, as for the other five defendants, the evidence would show at trial that those remaining defendants did not have any knowledge of a "significant" water leak, and thus they had no opportunity or reason to remedy the problem. However, plaintiff states that he repeatedly told defendants Hack, Arnold, Waters, Walters, Hart, Murray, and Cooley about the leak and repeatedly asked for cleaning supplies or to be moved to another cell pending repair of the (apparent) sewer leak. Plaintiff also specifically stated that defendants Hack, Walters, and Murray "made jokes to plaintiff about the sewer water in his cell and how bad it smelled." The work order that resulted in repair of the leak was dated November 8, so there is no dispute that a work order was not promptly placed when plaintiff first complained on October 9. To the extent the correctional officers informed the "bubble officer" as required, there is at least an issue of fact as to whether they should have

9

followed up on the work order request or supplied plaintiff with, for example, short term use of cleaning supplies such as gloves or extra towels. However, the plaintiff's evidence suggests that defendants did nothing except make jokes about the situation until, plaintiff says, his cellmate slipped in the sewer water after getting out of the top bunk to retrieve his medication. Plaintiff says that incident caused defendant Murray to report the sewer leak on November 8. It is significant to this Court's determination that, although the defendants state they do not write work orders[3], one defendant — Murray — actually submitted the work order for the leak in plaintiff's cell. Defendants do not explain this apparent discrepancy.

The Court notes that the plaintiff has tried diligently to determine which correctional officers would have been present and who was the "bubble officer" allegedly responsible for placing the work orders. Defendants — although they state in affidavits that they informed the "bubble officer" of the leak — do not identify to whom they reported. Plaintiff has filed another motion to compel (#88) and a motion seeking a stay of the summary judgment decision (#97). It appears that defendants supplied plaintiff with the shift schedule for the days in question, but it is not clear to the Court just who was the responsible bubble officer.

The Court will deny summary judgment as to the seven named correctional officers in their individual capacities. Counsel will be appointed for plaintiff in a separate and later-dated order, and discovery will be re-opened.

---

[3]Defendants state that "Correctional officers do not place work orders to maintenance. The correct procedure is to make such requests to bubble officers." (#73-1 at ¶ 9.)

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel (#88) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (#72) is **DENIED** in part and **GRANTED** in part.

**IT IS FURTHER ORDERED** that defendants maintenance supervisors Ricky Alley, David Kirkman, David Perkins, and Joe Jones are **DISMISSED**.

**IT IS FINALLY ORDERED** that plaintiff's motion to postpone a summary judgment decision until adequate discovery has been completed (#97) is **DENIED** as moot.

Dated this   12th   day of September, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE